UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Eric Montao Gordon,

                Plaintiff,

                                        **Hon. Hugh B. Scott**

                                        02CV0111

            v.                                **Decision &**
                                             **Order**

Carol Bridge, et al.,

                Defendants.
_____

Before the Court are the following motions: defendants' motion for summary judgment. (Docket No. 75); and plaintiff's motion for declaratory relief (Docket No. 82).

**Background**

The plaintiff, Eric M. Gordon ("Gordon"), commenced this action by filing a complaint against Carol Bridge ("Bridge") and Captain Vaughn ("Vaughn") on February 6, 2002 alleging that the defendants violated his constitutional rights and 42 U.S.C. §1983 by tampering with his outgoing mail while he was being held in the Erie County Holding Center ("ECHC"). (Docket No. 1). Bridge was an Assistant District Attorney with the Erie County District Attorney's Office. Vaughn was the Assistant Superintendent of the ECHC.

Bridge states that in her role as Assistant Bureau Chief for the Domestic Violence/Sexual

Assaults Bureau, she was assigned to prosecute Gordon on a number of occasions for various incidents involving a girlfriend named Allison ("Tracey") Coleman ("Coleman"). The record reflects that in March of 1999, Gordon was convicted of criminal contempt in the second degree[1] for having violated an order of protection relating to Coleman. The March 5, 1999 Order of Protection required Gordon, among other things, to "refrain from harassing, intimidating, threatening or interfering or having contact either in person or through a third party with Allison Coleman and members of victim's family or household, and refrain from contact by telephone, mail or through third party with Allison Coleman." (Docket No. 77, Exhibit B, page 18). The Order of Protection was to stay in effect through March 5, 2002. (Docket No. 77, Exhibit B, page 15).

On December 3, 1999, an Erie County Grand Jury issued an indictment against Gordon charging him with fifteen counts, alleging multiple counts of criminal contempt, assault, criminal possession of a weapon, aggravated criminal contempt and tampering with a witness. This indictment arose from allegations that between May 1, 1999 and May 31, 1999, Gordon burglarized Coleman's apartment; and on June 6, 1999, Gordon assaulted Coleman with a knife resulting in a deep stab wound to her thigh. Bridge was assigned to prosecute Gordon with respect to the charges in the indictment.

At some time while the prosecution relating to the indicted charges was pending, Bridge was contacted by Coleman or members of Coleman's family who advised Bridge that Gordon continued to write to Coleman from the ECHC to try to convince Coleman not to testify against him. (Docket No. 77, Exhibit A at ¶ 8). At some point in May of 2000, Bridge contacted a

---

[1] A violation of §215.50-3 of the New York State Penal Law.

Lieutenant Webster at the ECHC and advised him that Gordon continued to contact Coleman in violation of the Order of Protection.  Bridge stated that Webster advised that if an Order of Protection existed, the ECHC could block calls and intercept mail from Gordon to the individual listed in the Order.  In response to this information, Vaughn consulted the New York State Commission of Corrections Minimum Standards, 9 N.Y.C.R.R. Part 7004.2(f) which provides that outgoing nonprivileged mail of an inmate may be opened or read when "there is reasonable suspicion to believe that the contents of such correspondence endanger or threaten the safety or security of the facility or the safety, security or health of another person."  Vaughn determined that Gordon's alleged violation of the Order of Protection provided sufficient reasonable suspicion to inspect Gordon's mail.

On May 24, 2000, the ECHC issued a memorandum to Gordon advising him that all of his outgoing mail would be inspected to insure that Gordon was not in violation of the Order of Protection. (Docket No. 77, Exhibit E).  This memorandum advised Gordon that his failure to adhere to the Order would result in further criminal charges.

Notwithstanding the notice to Gordon that his mail would be inspected to insure that he was not contacting Coleman in violation of the Order of Protection, Gordon continued to write to Coleman. These letters were confiscated and provided to Bridge to be used in connection with the prosecution of Gordon for violation of the Order of Protection. (Docket No. 77, Exhibit F). After a jury trial on June 1, 2000, Gordon was ultimately convicted of four counts of criminal contempt in the second degree and three counts of tampering with a witness.

Gordon contends that the inspection of his mail under these circumstances constitutes a violation of his First Amendment rights.  The defendants seek summary judgment on various

grounds. The plaintiff seeks declaratory judgement finding that the defendants' conduct violated his First Amendment rights.

## Discussion

**Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." It is well settled that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). This requirement applies even to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings, as long as other forms of relief are obtainable through administrative channels. Booth v. Churner, 532 U.S. 731 (2001).

It is undisputed that Gordon did not file an administrative grievance relating to the May 2000 confiscation of his mail in either 2000 or 2001. Gordon filed this action in 2002. Subsequent to the commencement of this action, Gordon did file an administrative grievance in 2003 relating to the confiscation of his mail in 2000. That grievance was denied as untimely. Gordon has not demonstrated that he made a timely attempt to file a grievance regarding the claims in the complaint. Gordon testified that he was generally familiar with the grievance process and that he had received a copy of the inmate handbook (Docket No. 77, Exhibit M at

page 17-19). However, Gordon asserts that during his criminal trial in May and June of 2000, he attempted to bring the constitutional claim to the Court's attention. He asserts that the Judge presiding over his trial in New York State Supreme Court advised him to "make the appropriate application to the appropriate court." (Docket No. 81 at page 3). Gordon's objection during his criminal trial is insufficient to constitute an exhaustion of his administrative remedies regarding this claim. Further, a statement by the state court judge, such as alleged in this case, does not relieve the plaintiff from the exhaustion requirement.

Based on the above, the plaintiff has failed to exhaust his administrative remedies requiring that the complaint in this case be dismissed.

**Prosecutorial Immunity**

Bridge also asserts that she is protected by prosecutorial immunity. Prosecutors are absolutely immune from claims arising from conduct "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 357 (2d. Cir. 2004). Bridge's conduct, in advising the ECHC of the allegations that Gordon was violating the terms of the Order of Protection, and in obtaining and using the confiscated letters in this case, was intimately associated with the judicial phase of Gordon's prosecution. Bridge is entitled to absolute prosecutorial immunity from the claims in this action.

**First Amendment Claim**

Even if the plaintiff's claims were not dismissed for failure to exhaust administrative remedies, summary judgment would still be warranted inasmuch as the defendants' conduct did not violate Gordon's First Amendment rights.

Although inmates do not forfeit all constitutional protections by reason of their conviction and confinement, it is well-settled that upon entering into confinement, a prisoner's constitutional rights are limited by the legitimate penological needs of the prison system. Bell v. Wolfish, 441 U.S. 520, 545 (1979); U.S. v. Felipe, 148 F.3d 101, 107 (2d. Cir. 1998). The Supreme Court has ruled that the interception of a defendant's prison correspondence does not violate that individual's First or Fourth Amendment rights if prison officials had "good" or "reasonable" cause to inspect the mail. Felipe, 148 F.3d. at 108, citing United States v. Workman, 80 F.3d 688, 699 (2d Cir.1996) (We think it clear that--at least where prison officials have reasonable cause for suspicion--surveillance of inmate mail is unobjectionable under the [First and] Fourth Amendments.). A penological interest existed in insuring that Gordon did not continue to commit criminal behavior, by violating the Order of Protection and tampering with witnesses, while incarcerated at the ECHC.

In addition, under the circumstances present in this case, the defendants properly determined that Gordon's conduct fell within the ambit of 9 N.Y.C.R.R. Part 7004.2(f) and followed the procedure required in 9 N.Y.C.R.R. Part 70004.2(h), advising him that his mail would be inspected to insure that he was not violating the terms of the Order of Protection. The defendants' conduct in this regard did not violate the plaintiff's First or Fourth Amendment

rights.

## Conclusion

Based on the above, the defendants' motion for summary judgment is granted and the plaintiff's motion for a declaratory judgment is denied. The Clerk of the Court is directed to close this case.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

                                                  s/ Hon. Hugh B. Scott
                                                  United States Magistrate Judge

Buffalo, New York
August 2, 2005